JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

18  4775

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Richard R. Cadmus Jr.

**DEFENDANTS**
Christopher E. Brown, Rocco J. Deleonardis, Deborah R. Whitlock, Bruce A. Jones, Robert L. Jones, Consumer Law, PLLC, Brown Firm

**(b)** County of Residence of First Listed Plaintiff   City of Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Prince George's County Md
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro Se

Attorneys *(If Known)*
Not known

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane — ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability — ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander — Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability — Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine — ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle — **PERSONAL PROPERTY** ☐ 370 Other Fraud | **LABOR** | | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability — ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury — ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice — ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| | | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** — **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights — **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting — ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment — ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations — ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment — ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other — **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education — ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332

Brief description of cause:
unpaid litigation support and paralegal services, breach of fiduciary duty, unjust enrichment, tortious interfernce, etc

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   700,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE  Groh in Jones; Urbanski in Minifield    N.DW.Va  3:13cv00008 GMG-RWT
DOCKET NUMBER  5:17cv00043 (USDC Virginia)

DATE
11/02/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

JS 44 Reverse (Rev. 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

|  | | CIVIL ACTION |
|---|---|---|
| v. | : | |
| | : | NO. **18    4775** |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     (✗)

11-25-18        Richard Cadmus Jr    Pro se
**Date**        ~~Attorney-at-law~~        ~~Attorney for~~

540 395-3539        _____        randcadmus@gmail.com
**Telephone**        **FAX Number**        **E-Mail Address**

(Civ. 660) 10/02

MSG

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

18    4775

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: *2010 W. Oxford St Philadelphia PA 19121*

Address of Defendant: *Christopher E. Brown - 11103 Dappled Grey WAY*

Place of Accident, Incident or Transaction: *Plaintiff was in Philadelphia  Upper Marlboro MD*
*PA                                                20772*

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☒

I certify that, to my knowledge, the within case ☐ is ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: *11-5-18*     *R. Cadu*
_____     _____
*Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.     Federal Question Cases:**

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify): _____*

**B.     Diversity Jurisdiction Cases:**

- ☒ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*     *Conspiracy*
- ☐ 7. Products Liability     *Tortious Interference*
- ☐ 8. Products Liability – Asbestos     *Defamation*
- ☐ 9. All other Diversity Cases
  *(Please specify): _____*

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, *Richard R. Cadmy* counsel of record *or pro se plaintiff*, do hereby certify:

- ☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☒ Relief other than monetary damages is sought.

DATE: *11-5-18*     *R. Cadu*
_____     _____
*Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*



# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA
### *(Philadelphia Division)*

RICHARD R. CADMUS JR.,         )
                                          )

                   *Plaintiff,*     )

**v.**                                )

THE BROWN FIRM, PLLC.,     )
Serve: TMINSTITUTE LLC     )
   109 S. Fairfax St.        )
   Alexandria, Virginia,    )
   22314                )

CRISTOPHER E. BROWN,     )
Serve: 11103 Dappled Grey WAY, )
    Upper Marlboro, Maryland, )
    20772             )

CONSUMER LAW, PLLC,     )
Serve: Business Filings Incorporated, )
    4701 Cox Road, Suite 285  )
    Glenn Allen, Virginia     )
    23060            )

ROCCO J. DELEONARDIS,    )
Serve: 510 6th St. NE       )
    Washington, DC 20002   )

DEBORAH R. WHITLOCK,    )
Serve: 60 Lucille LN        )
    Toccoa, GA  30577     )

ROBERT L. JONES,         )
Serve: 108 Clearwater CT,    )
    Stephens City, VA 22655  )

BRUCE A. JONES,          )
Serve: 108 Clearwater CT,    )
    Stephens City, VA 22655  )

                  *Defendants.*  )

**18    4775**

CIVIL ACTION NO._____

**JURY TRIAL DEMANDED**

1

# TABLE OF CONTENTS

COMPLAINT.................................................................................................................... 4

NATURE OF THE CASE ............................................................................................... 4

PARTIES......................................................................................................................... 5

JURISDICTION.............................................................................................................. 7

VENUE ........................................................................................................................... 7

FACTUAL ALLEGATIONS .......................................................................................... 7

    "Jurisdictional Facts" ........................................................................................ 7

    "The Jones Case"............................................................................................... 9

        Jones Billing....................................................................................... 12

    "The Minifield Case"....................................................................................... 12

      "Attorney 1".................................................................................................. 12

      "Attorney 2".................................................................................................. 13

      "Attorney 3".................................................................................................. 14

      "Attorney 4".................................................................................................. 15

      "Minifield Billing"........................................................................................ 20

COUNTS ....................................................................................................................... 21

    FIRST CLAIM FOR RELIEF ........................................................................ 21

      "Breach of Contract" ................................................................................... 21

    SECOND CLAIM FOR RELIEF ................................................................... 22

      "Breach of Contract" ................................................................................... 22

    THIRD CLAIM FOR RELIEF ...................................................................... 23

      "Breach of Implied in Fact Contract" ........................................................ 23

    FOURTH CLAIM FOR RELIEF ................................................................... 25

      "Breach of Implied in Fact Contract" ........................................................ 25

    FIFTH CLAIM FOR RELIEF ....................................................................... 26

      "Misrepresentation" .................................................................................... 26

    SIXTH CLAIM FOR RELIEF....................................................................... 26

"Fraud in the Inducement" ................................................................................26

SEVENTH CLAIM FOR RELIEF ................................................................................27
"Gauranty and Coobligor" ................................................................................27

EIGHTH CLAIM FOR RELIEF ................................................................................27
"Disregard Professional Limited Liability Company Entities" ...........................27

NINTH CLAIM FOR RELIEF ................................................................................28
"Breach of Implied Covenant of Good Faith and Fair Dealing" ........................28

TENTH CLAIM FOR RELIEF................................................................................29
"Breach of Fiduciary Duty and Aiding and Abetting Breach" .......................29

ELEVENTH CLAIM FOR RELIEF................................................................................32
"Unjust Enrichment" ................................................................................32

TWELVTH CLAIM FOR RELIEF ................................................................................32
"Tortious Interference" (Against Brown and Whitlock) ....................................32

THIRTEENTH CLAIM FOR RELIEF ................................................................................35
"Defamation" ................................................................................35

FOURTEENTH CLAIM FOR RELIEF ................................................................................36
"Civil Conspiracy" ................................................................................36

FIFTEENTH CLAIM FOR RELIEF ................................................................................37
"Preliminary and Permanent Injunctive Relief"................................................37

SIXTEENTH CLAIM FOR RELIEF ................................................................................38
"Negligence" ................................................................................38

PRAYER FOR RELIEF................................................................................39

## COMPLAINT

Plaintiff Richard R. Cadmus Jr. ("Plaintiff or "Cadmus"), files this Complaint against Christopher E. Brown, Esq., Rocco Deleonardis, Deborah R. Whitlock, The Brown Firm, PLLC, Consumer Law, PLLC, counsel, and alleges the following:

## NATURE OF THE CASE

1.     This controversy surrounds unpaid billing invoices and/or the non-payment for litigation support, paralegal and other work and/or services provided to three (3) attorneys including Defendants Attorney Christopher E. Brown, Esq., Attorney Deborah R. Whitlock, Esq. and (disbarred) Attorney Rocco J. Deleonardis in support of two high profile police homicides which occurred in Winchester, Virginia and Martinsburg, West Virginia respectively (hereinafter "the Minifield Case" and "the Jones Case"). In both --- local white/Caucasian police officers chased down, shot and killed unarmed African American males who ran from police officers from behind.

2.     Richard R. Cadmus Jr. (hereinafter "Plaintiff" or "Cadmus") alleges the captioned Attorney Defendants conspired to withhold payment after litigation support and paralegal services were rendered to them and benefits were received by them; as well as the captioned Defendants tortuously interfered with Plaintiffs business expectancy; and breached their fiduciary obligation among other things toward Plaintiff.

3.     Further, Plainitiff alleges Defendants committed defamation and defamation per se and conspiracy to commit defamation and conspiracy to commit tortious interference by Attorney Christopher E. Brown, Esq. and Attorney Deborah R. Whitlock, Esq.

4

## PARTIES

4.    Plaintiff **Richard R. Cadmus Jr**. maintains domiciliary in Philadelphia, Pennsylvania. He is a freelance federal litigation paralegal who, at all related times herein, provided project based paralegal services throughout the United States to licensed attorneys. Cadmus never graduated from an ABA accredited law school and he has not passed any state bar exam in the contiguous states or elsewhere.

13. At all related times herein, Defendant **THE BROWN FIRM, PLLC** (hereinafter "Brown Firm") is a professional limited liability company organized and existing under the laws of Virginia with a principal place of business in Alexandria, Virginia. Christopher E. Brown is the principle share holder and sole member and manager of said professional limited liability company which is located and conducts business at 526 King St. Suite 207, Alexandria VA 22314.

5.    Brown Firm is also vicariously liable for the complained of breach of contract, negligence and/or intentional tortious conduct committed by Christopher E. Brown.

6.    At all relevant times herein, **Defendant Christopher E. Brown** was an attorney authorized to practice law in the Commonwealth of Virginia and the District of Columbia. Brown maintains domiciliary in the state Maryland.

14. At all related times herein, **Defendant CONSUMER LAW, PLLC** (hereafter "Consumer Law") is a professional limited liability company organized and existing under the laws of Virginia with a principal place of business in Reston, Virginia. Rocco J. Deleonardis is the principle share holder and sole member manager of said company which is located and conducts business at 11480 Sunset Hills Rd, Reston VA 20190.

7.      Consumer Law is also vicariously liable for the complained breach of contract, negligence, and/or intentional tortious conduct committed by Deleonardis.

8.      At all related times herein, **Defendant Rocco J. Deleonardis** ("Defendant" or "Deleonardis") is an attorney who was authorized to practice law in the Commonwealth of Virginia from May 9, 1996 to February 19, 2016.   On information and belief, the Virginia State Bar suspended Deleonardis' authorization to practice law in Virginia for a period of no less than four (4) years to which said suspension will cease on February 19, 2020.

9.      At all related times herein, **Defendant Deborah R. Whitlock** ("Defendant" or "Whitlock") maintains domiciliary in the state of Georgia where she is authorized to practice law; and is admitted *pro hac vice* to practice law in the case styled as Civil Action No. 5:17cv00043  - *Jacqueline Minfield-Brown v. City of Winchester et al.*, presently being litigated in the United States District Court for the Western District of Virginia in Harrisonburg.   On information and belief, Whitlock is a sole practitioner who operates her practice under the name assumed name of The Law Offices of Deborah R. Whitlock.

10.     At all related times herein, **Defendants Robert L Jones** and **Bruce A. Jones** (hereinafter "Defendants" or "the Jones Estate" or "R.Jones" or B.Jones" or "Jones Case") were co-administrators and the personal representatives for the Estate of Wayne A. Jones.  R.Jones and B.Jones reside in and maintain domiciliary in Stephens City located in Frederick County, Virginia.

11.     At all related times herein, R.Jones and B.Jones filed application and were duly qualified as the Personal Representatives and Co-Administrators of the Estate of Wayne A. Jones by the Office of Fiduciary Supervisor for Berkeley County, WV located at 100 West King St., Suite

6

12, Martinsburg, West Virginia 25401.

## JURISDICTION

12.  The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship between all parties.   Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

## VENUE

13.  Venue is proper pursuant to 28 U.S.C. § 1391(a), § 1391(c) and § 1391(d).

14.  At all related times herein, Defendants purposefully and personally availed themselves to the jurisdiction of the Commonwealth of Pennsylvania by transacting business and/or causing tortious injury against and toward Plaintiff while he engaged in business transactions with Defendants from Philadelphia, Pennsylvania.

15.  Defendants knew Plaintiff was a freelance litigation paralegal who provided litigation support and business services remotely out of the city of Philadelphia, Pennsylvania.  Defendants reached out and engaged his services and intentionally conducted various business transactions with Plaintiff knowing he was permanently located in the Commonwealth of Pennsylvania.

## FACTUAL ALLEGATIONS

### "Jurisdictional Facts"

15.   Plaintiff is a freelance federal litigation paralegal who provides remote litigation support and paralegal services to attorneys throughout the United States.

16.   Further, attorneys contact Plaintiff via email, text and cell phone to provide Plaintiff with instructions, requests and engage him for litigation support as well as coordinate billing and payment from the Commonwealth of Pennsylvania.

17.  At all times herein, Defendants knew Plaintiff conducted business from the

7

Commonwealth of Pennsylvania.

18.   Defendants electronically forwarded legal documents to Plaintiff while he worked from the Commonwealth of Pennsylvania for Defendants.

19.   Defendants directed, instructed, or otherwise supervised Plaintiff while he worked from the Commonwealth of Pennsylvania.

20.   Pennsylvania's long arm statute confers jurisdiction over Defendants because they purposefully and knowingly conducted and/or solicited business transactions from Plaintiff who was located and doing business within the Commonwealth of Pennsylvania.

21.   Defendants intentionally reached out via phone, text, email and other means to communicate with Plaintiff about litigation matters, cases and support services.

22.   Specifically, defendants requested legal work product, billing invoices, amounts, contractual paperwork and discovery documents among other things.

23.   The character and quality of the contacts between Plaintiff and the captioned Defendants does not offend traditional notions of fair play and substantial justice.

24.   Further, Defendants purposefully availed themselves of the laws of and/or privilege of conducting activities in the Commonwealth of Pennsylvania by doing business with Plaintiff.

25.   After Defendants breached their agreement to pay Plaintiff for the completed paralegal services; the captioned Defendants conspired and confederated with one another to tortuously interfere with Plaintiff's business expectancy and commit defamation by slandering Plaintiff's good name among other malicious intentional torts. Therefore, no surprise exists here and Defendants should have reasonably anticipated being haled into the United States District Court for the Eastern District of Pennsylvania.

8

**"The Jones Case"**

26.   Initially, Plaintiff was hired by Defendants Attorney Deleonardis and Attorney Brown in October 2014 to provide investigative support, complex litigation support[1], complex appellate litigation support and other paralegal services including case management pertaining to the Jones Case among other things.

27.   Plaintiff's hourly rate for his services is One-Hundred Fifty ($150.00) Dollars per hour.

28.   Deleonardis and Brown directed Plaintiff to qualify as the Power of Attorney("POA") for Bruce Jones and Robert Jones.

29.   Deleonardis and Brown directed Plaintiff to sign the representation letter agreement on behalf of the Estate of Wayne A. Jones in order for Defendants to become legal counsel for the Estate.

30.   The representation letter agreement explicitly stated Plaintiff was providing paralegal services and litigation support to Defendants.

31.   Plaintiff and Defendants agreed the rate for paralegal services and litigation support in the Jones Case was to be One-Hundred Fifty ($150.00) Dollar per hour.

32.   At all related times herein, Attorney Brown's representation agreements indicated federal paralegals utilized would be compensated at One-Hundred Fifty ($150.00) per Hour.

33.   At all related times herein, Deleonardis and Brown agreed to pay Plaintiff One-Hundred ($150.00) Dollars per Hour for litigation support and paralegal service work performed by Plaintiff on the Jones Case.

34.   Plaintiff provided litigation support, paralegal and investigative services on the

---

[1]   **Litigation Support** means providing the following:  i.) legal research, legal writing, utilizing professional research and writing tools such as *West Law, Case Map, Text Map and Lexis Nexis* among others; ii.) legal analysis of facts, issues and the law; iii.) factual analysis of case reports, files, metrics and other evidentiary work product; iv.) legal communications/correspondence/emails/letters/ and various other paralegal administrative support tasks.

Jones Case from 2014 through 2017 (i.e., off and on for two (2) years) to Deleonardis and Brown.

35.     At the direction of Defendants, Plaintiff, *inter alia,* conducted the legal research, analysis and drafted the final work product known as the opening brief and generated the joint appendix for the Estate of Wayne A. Jones Appeal to the Fourth Circuit which was filed in March 2015.

36.     Deleonardis and/or Brown analyzed, corrected and reviewed all appellate filings prior to affixing their respective names to the signature block of all appellate briefs.

37.     Deleonardis and Brown regularly supervised, reviewed, relied on; and filed Plaintiff's work product throughout the Jones Case (i.e., "appeal").

38.     Plaintiff was directed by Deleonardis and Brown to interface with the clients as a liaison on behalf of the lawyers voluminous times over several years.

39.     Plaintiff traveled extensively and repeatedly to Reston, Virginia and Alexandria, Virginia to attend meetings at the direction and approval of Deleonardis and Brown from year 2014 through year 2016.

40.     Prior to oral argument at the Fourth Circuit Court of Appeals in 2016, Defendant Deleonardis was suspended by the Virginia State Bar from practicing law for a period no less than four (4) years and Brown assumed the role of lead counsel in the Jones Case thereafter.

41.     Brown continued to work with, direct and supervise Plaintiff. Indeed, he requested litigation support and utilized Plaintiff's work product generated under his request and supervision.

42.     Brown repeatedly affixed his signature to legal work product produced and forwarded to him after review, analysis and corrections.

10

43.    During oral argument in mid-2016 in the Fourth Circuit Court of Appeals in Richmond, Virginia, the Court remanded the case back to the Northern District of West Virginia for further proceedings based substantially on Plaintiff's research, analysis, writing and litigation support provided to Attorney Brown and Deleonardis.

44.    Brown directed Plaintiff to provide further litigation support to Deleonardis (now suspended), after the appeal was remanded; to do more legal research and focused writing on narrow dispositive issues which the district court was ordered to review by the Fourth Circuit.

45.    Plaintiff refused to work with Deleonardis from there on due to the serious bar inquiry issues which loomed over his law practice and because Deleonardis did not command a good understanding of the procedural and substantive facts and circumstances surrounding the Jones Case. (i.e., Deleonardis was a transactional title attorney with little to no civil rights or federal litigation experience)

46.    Deleonardis erroneously briefed the issues for Brown which caused ultimately lead to and caused the district court to dismiss the Jones Case (i.e., the second time) with prejudice in 2016.

47.    Afterward, Brown again reached out and relied on Plaintiff to provide appellate research, analysis and litigation support after the second dismissal from the district court.

48.    Plaintiff agreed to perform the work under the same arrangement and billing as was previously in place regarding the case.

49.    The Fourth Circuit remanded the case [again] for further proceedings in the United States District Court for the Northern District of West Virginia in Martinsburg, WV.

**Jones Billing**

50.     In January 2015, Plaintiff submitted itemized invoices for immediate payment to Deleonardis and Brown in the amount of **$24,652.50** on the Jones Case.

51.     In March 2015, Plaintiff submitted itemized invoices for immediate payment to Deleonardis and Brown in the amount of **$30,020.95** on the Jones Case.

52.     In June 2016, Plaintiff submitted itemized invoices for immediate payment to Deleonardis and Brown in the amount of **$22,352.55** on the Jones Case.

53.     In July 2018, Plaintiff submitted sourced and detailed billing invoices *supra* and the final billing invoice for immediate payment to Brown in the amount of **$20,006.25** for the Jones Case.

54.     In May 2018, the City of Martinsburg("City") made an offer of judgment to the Estate of Wayne A. Jones for One-Million ($1,000,000.00) Dollars plus the City defendants agreed to pay all attorney's fees and costs accumulated in the case.

55.     Attorney Brown requested updated billing from Plaintiff in July 2018 which he was provided via email.

56.     Deleonardis and Brown breached the agreement with Plaintiff and intentionally failed and refused to remit payment for litigation support and investigative/paralegal services that were completed in good faith by Plaintiff on behalf of Consumer Law, The Brown Firm, Rocco J. Deleonardis and Christopher E. Brown, Esq.

**Minifield Case**
*"Attorney 1"*

57.     Plaintiff was procured by Brown to provide litigation support and paralegal/investigative services to Brown in March 2016 after D'Londre Minifield was allegedly

12

shot and killed by a Winchester Police Department police officer in Winchester, Virginia.

58.     At the direction of Brown, Plaintiff went to the scene took pictures, met with the family of Minifield, conducted site investigations, generated FOIA requests and worked with Chuck Feldbush a twenty-seven year retired law enforcement detective from Prince William Police Department.

59.     As a result, Jacqueline Brown-Minifield signed a representation letter agreement with Brown Firm for legal and investigative work only in contemplation of filing a lawsuit against the City of Winchester and numerous police officers.   Brown directed Minifield to apply Ten Thousand ($10,000.00) Dollars as retainer for his necessary costs and services.

60.     The agreement letter expressly stated litigation support and paralegal services were One-Hundred Fifty ($150.00) per hour.

61.     Administrator Jacqueline Minifield-Brown did not remit payment to Brown for the Ten Thousand ($10,000.00) Dollars.

62.     At the direction of Brown, Plaintiff conducted legal research and writing including producing a proposed initial complaint which Brown reviewed, corrected and signed.

63.     Plaintiff subsequently attached the pleading to Brown's Notice of Claim to the City of Winchester and mailed the documents to the City Attorney for the City of Winchester at the explicit direction of Christopher E. Brown in October 2016.

64.     The Administrator terminated Attorney Brown's legal representation prior to the Minifield lawsuit ever being filed on or around January of 2017.

### "Attorney 2"

65.     Minifield-Brown engaged another attorney Bradley G. Pollack, Esq. (hereinafter

"Attorney Pollack" or "Pollack") in February 2017.

66.   Attorney Pollack and Minifield-Brown, both, signed an engagement letter during the meeting and entered into a client-attorney relationship.

67.   Pollack requested Plaintiff provide him with legal assistance including legal research, analysis, writing and ultimately, Plaintiff drafted the legal work product now known as the "Original Complaint" which was filed in Civil Action No. 5:17cv00043 in May 2017 and now pending litigation in the Western District of Virginia.

68.   Pollack affixed his signature to the Original Complaint and utilized his own CM/ECF account to file it in the United States District Court for the Western District of Virginia.

69.   The City of Winchester ANSWERED said Original Complaint.

70.   Plaintiff provided very little if any litigation support to Pollack, otherwise, from February 2017 through September 2017.

71.   Pollack withdrew from the Minifield Case in September 2017.

### "Attorney 3"

72.   Attorney Roger Roots made an appearance, *pro hac vice*, on behalf of Jacqueline Minifield-Brown in October of 2017 and agreed to take over the case.

73.   Plaintiff knew and worked with Roots in Las Vegas Nevada during the Cliven Bundy Standoff Trials in the District of Nevada. Roots was counsel for Cliven Bundy and Plaintiff provided litigation support to Roots during the year-long complex-severed federal criminal trial and ongoing civil trespass litigation.

74.   Plaintiff recommended Minifield-Brown reach out to Attorney Roots regarding becoming the attorney of record for the Estate of D'Londre Minifield which she did.

75.     Roots and Minifield-Brown entered into a client-attorney representation agreement in October 2017 who appeared *pro hac vice* in the Minifield Case.

76.     At the direction of Roots, Plaintiff organized all discovery and worked closely with Roots to draft the First, Second and Third Amended Complaints.

77.     All three (3) Amended complaints were essentially the same except for misnomers related to defendants and several syntax errors.

78.     The district court granted all three amendments filed by Attorney Roots.

79.     Opposing counsel failed to file any opposition responses to the Estate's motions for leave to amend; nor did they file objections to the amendments which were granted by the district court.

80.     Due to underhanded tactics of opposing counsel throughout discovery, Attorney Roots became frustrated and sought to withdraw from the case and substituted out of the case with another attorney.

**"Attorney 4"**

81.     Minifield-Brown reached out to Attorney Deborah R. Whitlock, Esq. in March of 2018 seeking counsel to litigate her civil rights case against the City of Winchester after Attorney Roots sought to leave the case.

82.     Whitlock reached out to Plaintiff about the posture of the case and his level of involvement in various phone and email correspondences.

83.     Plaintiff also expressly desired to leave the case and/or provide minimal assistance due to the posture of the case and his mother's wrongful death suit which was soon to be filed.

84.     Whitlock urged Plaintiff to remain and provide assistance to her (i.e., if she were

15

accept the Minifield Case)

85.   Whitlock and Plaintiff expressly discussed and agreed to his rate of One-Hundred Fifty ($150.00) per hour for all work provided.

86.   Whitlock also agreed to compensate Plaintiff for the litigation support provided to the previous attorneys in the Minifield Case.

87.   At the direction of Whitlock, Plaintiff provided legal research, analysis and suggestions for amending the "Roots" complaint because information was discovered that was not previously known.  Whitlock reviewed the issues and the previous complaints and directed Plaintiff to provide her with the necessary amendments previously proffered to her during discussions with sources.

88.   Plaintiff completed the work product and submitted it to Whitlock for her review and approval – however, her father and nephew were tragically run over and killed by a UPS Semi-Truck on the interstate while standing in the emergency lane.

89.   Plaintiff and local counsel Attorney Dave Johnson worked together to provide litigation support, discovery analysis and investigative services on behalf of Attorney Whitlock as she took immediate absence from law practice to attend to her family and the deaths of her loved ones..

90.   After a two (2) week hiatus, Whitlock directed Plaintiff to assist her with responses in opposition to Defendant's 12(b)(6) Motions.  She also hired her ex-husband, a disbarred attorney from the state of Georgia to provide legal services on the Minifield Case, also.

91.   Attorney Whitlock directed Plaintiff to conduct extensive legal research, perform legal analysis related to dispositive issues the Estate was faced with among other litigation

support tasks at Whitlock's request and under her supervision.

92.   Plaintiff forwarded all litigation work product to Attorney Whitlock for her review. She reviewed it, made her corrections (if necessary) and affixed her signature and/or made corrections and forwarded approval for Plaintiff to file with Whitlock's signature affixed thereto.

93.   Attorney Whitlock directed Plaintiff to meet with her and prepare for a July 5, 2018 Motions Hearing in Roanoke, Virginia  before the Honorable Michael Urbanski in the U.S. District Court for the Western District of Virginia.

94.   During the meetings, Plaintiff realized Attorney Whitlock did not have commanding knowledge of the facts, circumstances and legal issues which surrounded the Minifield Case and that she was severely affected by the death of her father and nephew.

95.   She could not name the defendants in the Minifield Case.

96.   She could not identify the individual defendants' complained of conduct during face to face meetings.

97.   She further admitted she did not understand the procedural and substantive issues which were at controversy for the July 5, 2018 Motions Hearing.

98.   Attorney Whitlock was unaware of the directions the defendants traveled toward the crime scene; which defendants chased the victim to the fence; the names of the eye-witnesses who observed the incidents leading up to the cause for which the case was sued out in federal court.

99.   Attorney Whitlock had not analyzed the 9-1-1 Audio Recording of the incident.

100.   Attorney Whitlock admitted she was not prepared.

101.   In damage control, Plaintiff suggested reaching out to Attorney Chris Brown (i.e.

as a temporary fix until Whitlock fully recovered from her emotional distress and incompetence related to the case) to assist Whitlock in the upcoming July 5, 2018 Hearing on Defendants dispositive motions.

102. Attorney Whitlock scheduled a meeting with Attorney Brown on the same day she was scheduled to fly out of Washington D.C. to go back to Georgia in June 2018.

103. At all times during Whitlock's meeting with Brown, Plaintiff was in Philadelphia, Pennsylvania.

104. During the meeting, Attorney Whitlock and Attorney Brown discussed Plaintiffs' lack of remuneration (i.e. how Plaintiff had not been paid for the litigation support he performed in the Jones Case and the Minifield Case and what to do about it)

105. Attorney Whitlock agreed with Brown through discussions in that meeting at 526 King St. Alexandria, Va. to essentially wipe out the labor costs of Plaintiff by turning the Minifield Case over to Attorney Brown who had already failed to pay for work completed in the Jones Case.

106. Defendants concocted a scheme to offer Plaintiff a reduced payment for his litigation support and paralegal services in the Jones Case – and disregard all litigation support previously provided to Defendants in the Minifield Case.

107. In June 2018, Plaintiff willingly and kindly turned over all case file information and work product to Attorney Brown at the direction of Attorney Whitlock.

108. Plaintiff turned over Lexis Case Map file, PDF Document Reports, Spreadsheets, Analysis briefs, Notes, Site Images, Maps, Diagrams, Schematics among other legal work product generated throughout the case and/or for Attorney Whitlock and partially utilized by

18

Attorney Brown inside the Fourth Amended Complaint("4AC")[2] filed in the Minifield Case at Whitlock's direction.

109.    As Attorney Whitlock traveled to the airport after the meeting with Attorney Brown, Whitlock called Plaintiff via cell phone and divulged that she "gave the case to Chris Brown" and said Brown was going to now "take care" of Plaintiff.

110.    Attorney Whitlock surreptitiously negotiated a deal for Attorney Brown to pay Plaintiff One-Hundred ($100,000.00) Dollars in lieu of Plaintiff's previously unpaid litigation support on the Jones Case and not pay Plaintiff for any of the litigation support in the Minifield Case.

111.    At no time was Attorney Whitlock involved in or provided legal representation to the Estate of Wayne A. Jones.

112.    At no time did Plaintiff provide any litigation support to Attorney Whitlock while he provided litigation support and paralegal services to Deleonardis and Brown while working on the Jones Case.

113.    Thereafter, Plaintiff refused to work with Chris Brown on the Minifield Case because he the Jones Case work completed remained unpaid by Deleonardis and Brown.

114.    As a result, Plaintiff was induced to end the working relationship with Attorney Whitlock.

115.    Brown did not pay Plaintiff for any of the work completed and turned over to him at Whitlock's instructions by Plaintiff.

116.    When Plaintiff demanded payment from Brown, he essentially communicated

---

[2]    The 4AC filed by Brown was materially altered and most counts and defendants were eventually voluntarily dismissed based on Brown's own legal work product.

Plaintiff would have to seek any payment from the Administrators of the Estate of Wayne A. Jones and the Administrator of the Estate of D'Londre Minifield instead.

117.    Deleonardis also failed and refused to pay Plaintiff's invoices for legal work and litigation support Deleonardis directed, utilized and benefited from in the furtherance of two (2) Fourth Circuit appeals which were reversed and remanded in the Jones Case.

## "Minifield Billing"

118.    Plaintiff billed Attorney Whitlock, specifically, for one-thousand one hundred twenty (1120) Hours of litigation support, paralegal and investigative services from March 2016 to June of 2018 on the Minifield Case at One-Hundred Fifty ($150.00) Dollars per hour.

119.    Via text message in August 2018, Whitlock communicated she was "broke" and could not pay Plaintiff for the litigation support provided to her; and she now refused to pay Plaintiff pursuant to the agreement Plaintiff had with Whitlock.

120.    Whitlock further communicated she would only pay [if] she received a settlement or judgement award as though Plaintiff was an attorney working on a contingency agreement which he was not.

121.    Attorney Whitlock knew Plaintiff was not an attorney and therefore not able to be treated like one for payment of litigation costs of the case.

122.    At all times herein, Plaintiff never agreed to any contingency agreement with the captioned Defendants.

123.    Whitlock further knew and agreed to Plaintiff's hourly rate.

124.    She further directed Plaintiff to conduct substantial litigation support and provide her with extensive legal research, documents and time sensitive work product which she

reviewed, altered, relied on and filed during the course of litigation.

125.    Defendants have been benefited and enriched by Plaintiffs litigation support provided in the Jones Case and the Minifield Case.

126.    Defendants have failed and refused to remit payment for work performed in bad faith.

127.    Only after Plaintiff threatened litigation for "non-payment" of his invoices for the litigation support and paralegal services, did Defendants begin to besmirch him and his paralegal services publicly.

## COUNTS

### FIRST CLAIM FOR RELIEF
"Breach of Contract"
(Against Deleonardis, Brown, Whitlock,
Consumer Law, PLLC, The Brown Firm, PLLC)

128.    All allegations set forth above not inconsistent with the remaining allegations of this First Claim for Relief are hereby realleged and incorporated herein by reference as if fully set forth herein.

129.    Defendant Deleonardis, Brown, Whitlock, Consumer Law and Brown Firm solicited Plaintiff to provide litigation support and paralegal services in the Jones Case and Minifield Case and failed to pay.

130.    Defendants owe Plaintiff the sum of $311,250.00 for unpaid balances related to litigation support, paralegal services and associated costs provided to them from 2014 through 2018 in the Jones Case and Minifield Case.

## SECOND CLAIM FOR RELIEF
### "Breach of Contract"
(Against R. Jones and B. Jones)

131.    All allegations set forth above not inconsistent with the remaining allegations of this Second Claim for Relief are hereby realleged and incorporated herein by reference as if fully set forth herein.

132.    Defendant Robert Jones and Bruce Jones, individually, and as the personal representatives and co-administrators for the Estate of Wayne A. Jones requested Plaintiff be their communication medium between Defendants Deleonardis and Brown.

133.    Plaintiff was the duly authorized attorney-in-fact for the Estate of Wayne A. Jones, Robert Jones and Bruce Jones from October 2014 through March 2015.

134.    Robert L. Jones terminated the attorney in fact agreement between the Administrators and Plaintiff in March of 2015.

135.    Defendants agreed to remit payment for Seventy-Five ($75.00) Dollars per hour for services provided by Plaintiff including public relations and other non-legal activities including but not limited supporting the Estate in interviews, articles, internet social media content and conducting other tasks as directed by the administrators.

136.    Plaintiff provided approximately Two-Hundred (200) Hours of focused "attorney-in-fact" support specifically to Robert Jones and Bruce Jones from October 2014 through March 2016.

137.    Defendants have received Plaintiff's itemized billing invoices and failed and refused to pay Plaintiff for the services provided to them.

22

### THIRD CLAIM FOR RELIEF
"Breach of Implied in Fact Contract"
(Against Deleonardis, Brown, Whitlock
Consumer Law, PLLC and The Brown Firm, PLLC,
Bruce A. Jones and Robert L Jones)

138.     All allegations set forth above not inconsistent with the remaining allegations of this Third Claim for Relief are hereby realleged and incorporated herein by reference as if fully set forth herein.

139.     To the extent an express contract was not formed, or to the extent a portion of the amounts claimed due were not covered under that express contract, an implied in fact contract was formed pursuant to the agreements described above.

140.     The conduct of Defendants manifests that they agreed to a contract whereby Defendants agreed to provide legal representation to the personal representatives for the Estate of Wayne A. Jones (i.e., Attorneys Deleonardis and Brown) and/or the personal representative for the Estate of D'Londre Minifield (i.e., Attorneys Whitlock and Brown) and the Estates agreed to pay the Attorneys' reasonable expenses and costs to litigate their lawsuits.

141.     Given the circumstances, Plaintiff was justified in believing and relying on Attorney Defendants expressed intentions as counsel for the respective Estates to pay Plaintiff for litigation support, paralegal, investigative and administrative services and costs rendered to them.

142.     Plaintiff's belief in the furtherance thereof was objectively reasonable.

143.     Plaintiff was also justified in believing and relying on the Estate's expressed intentions to pay Plaintiff for all non-legal services provided to and in benefit for them.

144.     Plaintiff rendered litigation support, paralegal, investigative and administrative services to Defendant[s] Deleonardis, Brown and Whitlock.

145.     Defendants Deleonardis, Brown and Whitlock are contractually obligated to

23

pay Plaintiff the total charges remaining due of $311,250.00 over the course of four (4) years of federal litigation support for two (2) high profile police homicides and two (2) federal appellate reversals.

146.     Defendants Robert L. Jones and Bruce A. Jones are directly obligated to pay Plaintiff the total charges of $15,000.00 for services provided to them at their request.

147.     As a result of their failure to pay Plaintiff the amount due and owing, Attorney Defendants are in breach of contract and have caused Plaintiff to suffer damages in excess of at least $326,250.00, plus prejudgment interest, costs and attorney's fees.

148.     As a result of their failure to pay Plaintiff the amount due and owing, Robert L. Jones and Bruce A. Jones are in breach of contract and have caused Plaintiff to suffer damages in excess of at least $15,000.00 plus prejudgment interest, costs and attorney's fees.

149.     After the Jones Estate received a One-Million ($1,000,000.00) Dollar offer of judgement plus payment for attorneys' fees and litigation costs incurred during the case at bar and two (2) federal appeals -- Defendants had a fiduciary duty to protect the financial interests of Plaintiff and others who have not been paid for their work performed on the Jones Case.

150.     All captioned Defendants breached their fiduciary duty to protect Plaintiff and others who provided labor and services on the Jones Case when they each conferred and agreed to not accept the Rule 68 Offer of Judgment.

151.     Defendants rejection of the One-Million ($1,000,000.00) Dollar Rule 68 Offer was objectively not reasonable.

152.     Consumer Law and Brown Firm are essentially shell entities with no financial assets and property for Plaintiff to levy or garnish.

24

153.    Robert L Jones and Bruce A. Jones as personal representatives for the Estate of Wayne A. Jones are essentially bankrupt with no means to pay for the litigation support, paralegal and investigative services Plaintiff provided to Defendants Deleonardis and Brown.

154.    On information and belief, Defendants have sheltered their financial assets for their own personal use and gain instead of paying for the extensive litigation support provided to Defendants by Plaintiff and others who will most likely not be able to discover monies being hidden concealed and/or converted, **wired into secret bank accounts in New York** and/or have already been converted while Plaintiff has patiently waited in good-faith for payment from Defendants for the labor and litigation support services provided to Deleonardis, Brown, Consumer Law, Brown Firm, Whitlock, R. Jones and B.Jones.

155.    The above described actions of Defendants in intentionally impoverishing themselves to the detriment of Plaintiff and/or converting monies received by Defendants for personal use and gain and in failing to pay Plaintiff from those monies and/or Offers of settlement subject Defendants to personal liability for the intentional impoverishment of monies by Defendants and/or otherwise converted and/or failure to pay Plaintiff's invoices and others. Therefore, Defendants are personally obligated to pay and owe to Plaintiff the full total charges due of $326,250.00, plus accrued interest, fees and charges.

### FOURTH CLAIM FOR RELIEF
#### "Breach of Implied in Fact Contract"
(Against Deleonardis, Brown, Consumer Law, PLLC and The Brown Firm, PLLC)

156.    All allegations set forth above not inconsistent with the remaining allegations of this Fourth Claim for Relief are hereby realleged and incorporated herein by reference as if fully set forth herein.

157. Defendants Deleonardis and Defendant Brown are liable to Plaintiff for the litigation support and paralegal services provided to them throughout the Jones Case from October 2014 through June 2018 as purchaser, or alternatively, in equity for the value of benefits bestowed on the value of the litigation support and paralegal services had and received.

## FIFTH CLAIM FOR RELIEF
### "Misrepresentation"
(Against Deleonardis, Brown, Whitlock Consumer Law, PLLC and The Brown Firm, PLLC)

158.   All allegations set forth above not inconsistent with the remaining allegations of this Fifth Claim for Relief are hereby realleged and incorporated herein by reference as if fully set forth herein.

159.   Defendants misrepresented to Plaintiff that full and prompt payment would be delivered within a reasonable time which Plaintiff relied thereon and provided litigation support and paralegal services to Deleonardis, Brown and Whitlock and other services to the R.Jones and B.Jones throughout the pendency of the Jones Case and Minifield Case.

## SIXTH CLAIM FOR RELIEF
### "Fraud in the Inducement"
(Against Deleonardis, Brown, Whitlock Consumer Law, PLLC and The Brown Firm, PLLC)

160.   All allegations set forth above not inconsistent with the remaining allegations of this Sixth Claim for Relief are hereby realleged and incorporated herein by reference as if fully set forth herein.

161.   Defendants' misrepresentations and actions fraudulently induced Plaintiff to deliver and/or perform continued litigation support, paralegal and investigative services, and Plaintiff relied thereon and provided the litigation support, paralegal and investigative services in the Jones Case and Minifield Case.

## SEVENTH CLAIM FOR RELIEF
### "Gauranty and Coobligor"

(Against Deleonardis, Brown, Whitlock, Consumer Law, PLLC and The Brown Firm, PLLC)

162.    All allegations set forth above not inconsistent with the remaining allegations of this Seventh Claim for Relief are hereby realleged and incorporated herein by reference as if fully set forth herein.

163.    Deleonardis, Brown and Whitlock assured Plaintiff they were personally purchasing the services of and responsible for the promise to pay for Plaintiff's labor and litigation support and Defendants are liable to Plaintiff as a guarantor for Consumer Law, PLLC and The Brown Firm, PLLC and The Law Offices of Deborah R. Whitlock, Esq.

## EIGHTH CLAIM FOR RELIEF
### "Disregard Professional Limited Liability Company Entities"
(Against Deleonardis, Brown, Whitlock Consumer Law, PLLC and The Brown Firm, PLLC)

164.    All allegations set forth above not inconsistent with the remaining allegations of this Eighth Claim for Relief are hereby realleged and incorporated herein by reference as if fully set forth herein.

165.    Upon information and belief Defendants Brown owns and controls The Brown Firm, PLLC, and the same is treated as an alter ego of Christopher E. Brown, or is thinly capitalized, or the PLLC formalities are disregarded, and monies and or properties are transferred by and among the The Brown Firm, PLLC and to Christopher E. Brown, such that the professional limited liability company should be disregarded and judgment entered against Christopher E. Brown for amounts due Plaintiff.  It is unfair and inequitable for Christopher E. Brown to profit from the litigation support and paralegal services provided to him by Plaintiff, and/or failure to pay Plaintiff.

166.    Upon information and belief Defendants Deleonardis owns and controls Consumer

27

Law, PLLC, and the same is treated as an alter ego of Rocco J. Deleonardis, or is thinly capitalized, or the professional limited liability company formalities are disregarded, and monies and or properties are transferred by Consumer Law, PLLC to Rocco J. Deleonardis, such that the professional limited liability company should be disregarded and judgment entered against Rocco J. Deleonardis for amounts due Plaintiff. It is unfair and inequitable for Rocco J. Deleonardis to profit from the litigation support and paralegal services provided to him by Plaintiff, and/or failure to pay Plaintiff.

**NINTH CLAIM FOR RELIEF**
*"Breach of Implied Covenant of Good Faith and Fair Dealing"*
(Against All Defendants)

167.    All allegations set forth above not inconsistent with the remaining allegations of this Ninth Claim for Relief are hereby realleged and incorporated herein by reference as if fully set forth again.

168.    Defendants had a duty to not only consider all reasonable offers but reasonably consider all outstanding debts incurred by Deleonardis, Brown, Consumer Law and Brown Firm in the course of litigation.

169.    In addition, a term of the Agreement, implied in fact, required R.Jones and B.Jones to use reasonable efforts, considerations and rely on reasonable legal advice of counsel to accept a bona-fide offer in the event one was made by City of Martinsburg Defendants to the Estate.

170.    The Administrators relied on factors that were objectively not reasonable to justify the rejection of a wrongful death offer to settle and Attorney defendants allowed them to do it.

171.    The Administrators sent Plaintiff an email stating they rejected the offer because

28

One-Million Dollars ($1,000,000.00) Dollars was not enough to get the "cops" who killed their brother fired and/or arrested.

172.    Wrongful death case settlements or awards are not for the purpose of "getting cops" fired or arrested.  Indeed, Wrongful Death settlements are for the purpose of compensating the statutory beneficiaries for the loss of a loved one who died wrongfully as a result of conduct committed by another.

173.    Defendants violated an implied covenant of good faith and fair dealing arising from the Agreement between Plaintiff and Defendant Deleonardis, Brown, Consumer Law, PLLC and The Brown Firm, PLLC, by reason of their failure to accept a reasonable and fair settlement offer which provided for statutory compensation for the loss of their brother and fulfilled their fiduciary duties to pay all the litigation bills for the Estate.

174.    As a result thereof, Plaintiff is entitled to judgment against all Defendants for actual damages, in an amount to be established at trial, for breach of the contract's implied covenant of good faith and fair dealing.

### TENTH CLAIM FOR RELIEF
*"Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty"*
*(Against Deleonardis, Brown, B.Jones, R.Jones,*
*Consumer Law, PLLC, The Brown Firm, PLLC.)*

175.    All allegations set forth above not inconsistent with the remaining allegations of this Tenth Claim for Relief are hereby realleged and incorporated herein by reference as if fully set forth herein.

176.    Plaintiff placed confidence and trust in Defendants with their full knowledge that Plaintiff would forbear billing and payment on work performed in full expectation that Defendants would not reject and/or deny a reasonable Offer of Judgement by City Defendants in the event of a

settlement in the Jones Case.

177.    Defendants Deleonardis, Brown, Consumer Law, PLLC, The Brown Firm, PLLC, R.Jones and B.Jones enjoy full control over the decision making power over the legal and equitable decisions pertaining to the Jones Case lawsuit including legal decisions, cost decisions and whether to continue to litigate or settle the lawsuit.

178.    By utilizing the services of Plaintiff, Defendants exploited, *inter alia*, Plaintiffs good-faith efforts to provide litigation support including utilizations of Plaintiff's legal tools and law subscriptions, generation of legal work product, legal analysis of complex issues and problems, legal research, legal writing and appellate research, writing and litigation support as well as various legal and/or administrative tasks including docket management, Pacer download costs, mailing and postage costs and substantial travel expenses without any remuneration.

179.    Defendants are duty bound to operate in the utmost of good-faith for the benefits of those that provided litigation support, services and resources to the Jones Case which was the direct and proximate cause and/or contributed to the May 2018 -- Rule 68 Offer of Judgment for One-Million ($1,000,000.00) Dollars plus agreeing to pay all legal fees and costs incurred.

180.    Defendants took advantage of Plaintiffs trust without knowledge or consent when they failed to consider the outstanding invoice balances and/or promptly remit payment for Plaintiff's labor and services which Defendants directly benefited from.

181.    Defendants took advantage of Plaintiffs trust without his knowledge or consent when they withheld the existence of a Rule 68 Offer of Judgment from Plaintiff whom only discovered it through other inadvertent means.

182.    Defendants took advantage of Plaintiffs trust without his knowledge or consent when

30

they rejected and/or denied the May 2018 -- Rule 68 Offer.

183.   Defendants Deleonardis, Brown, Consumer Law, PLLC and The Brown Firm, PLLC took advantage of Plaintiffs trust (i.e., by placing the burden on Plaintiff to collect payment from the attorneys' clients) without knowledge or consent when Attorney Defendants were in total control of litigation decisions.   They willingly assumed the absurdly high risk of the Jones Case being dismissed with prejudice based on qualified immunity and/or summary judgment after the May 2018 -- Rule 68 Offer was rejected by the Administrators of the Estate of Wayne A. Jones.

184.   Defendants R.Jones and B.Jones took advantage of Plaintiffs trust without knowledge or consent when they assumed the position that they intended to reject and, indeed, did reject/deny the Rule 68 offer to settle because "it was not enough money to get the police officers fired and thrown in jail for shooting and killing Wayne A. Jones".

185.   At all related times herein, Defendants had an obligation to act in the best interest of Plaintiff.

186.   As such, Defendants owed and still owes to Plaintiff a fiduciary duty and duty of loyalty not to engage in high risk decisions and not to turn a blind eye to a objectively reasonable Rule 68 – Offer to settle all debts which would otherwise be contrary to the interests of Plaintiff and others who have provided thousands of hours of pain staking legal work and are owed money by Defendants Deleonardis, Brown, Consumer Law, PLLC, The Brown Firm, PLLC or alternatively R.Jones and B.Jones.

187.   Defendants continue to engage in this absurdity and high risk decision making conduct and activities described herein, which threatens to violate and has violated intentionally, materially and directly, the fiduciary and common law duties which

31

Defendants owed and still owes to Plaintiff.

188.   Defendants Deleonardis, Brown, Consumer Law, PLLC, The Brown Firm, PLLC have knowingly aided and abetted R.Jones and B.Jones in said violations of their fiduciary and common law duties, which Defendants owed and still owes to Plaintiff.

189.   By reason of the foregoing, Plaintiff will sustain or has sustained significant injury and damage and is entitled to recover judgment against Defendants for same in an amount to be established at trial.

**ELEVENTH CLAIM FOR RELIEF**
**"Unjust Enrichment"**
*(Against Deleonardis, Brown, Whitlock, Consumer Law, PLLC,*
*The Brown Firm, PLLC, R.Jones and B.Jones)*

190.   All allegations set forth above not inconsistent with the remaining allegations of this Eleventh Claim for Relief are hereby realleged and incorporated herein by reference as if fully set forth herein.

191.   Defendants have acquired and will acquire revenues, profits and competitive advantage, and other benefits from Plaintiff's litigation, paralegal and investigative services under circumstances in which it would work a substantial injustice and unjustly enrich them were they permitted to retain any or all of a reasonable settlement or award of damages.

192.   As a result thereof, Plaintiff is entitled to judgment against Defendants for actual damages, in an amount to be established at trial, for unjust enrichment.

**TWELVTH CLAIM FOR RELIEF**
**"*Tortious Interference*"**
(Against Brown and Whitlock)

193.   All allegations set forth above not inconsistent with the remaining allegations

of this Twelvth Claim for Relief are hereby realleged and incorporated herein by reference as if fully set forth herein.

194. At all relevant times, Brown knew Plaintiff was working under the direction of Whitlock on the Minifield Case.

195. At all relevant times, Whitlock knew Plaintiff previously worked under the direction and oversight of Brown in the Jones Case.

196. Whitlock also knew Brown and Deleonardis owed Plaintiff for completed work and litigation support and other work performed by Plaintiff at Brown's request and direct supervision.

197. Prior to making her appearance in April 2018, Defendant Whitlock did not know Defendant Brown.

198. Whitlock was introduced to Brown through Plaintiff while assisting Whitlock on the Minifield Case.

199. Upon information and belief, Defendants contrived a deal to negotiate Plaintiff's billing invoices for a reduced One-Hundred Thousand ($100,000.00) Dollars which were previously submitted in the Jones Case for the purpose of erasing all of his litigation support on Minifield from 2016 through 2018.

200. Defendants agreed and confederated to smear Plaintiff and disingenuously ascribe all failure and fault in the Minifield Case toward Plaintiff which was untruthful and patently false.

201. Defendants besmirched Plaintiff to other attorney clients of Plaintiff who utilize his litigation support and paralegal services in the Commonwealth of Virginia and federal district

33

courts throughout the country.

202.    Defendants made demonstrably false statements and characterizations about Plaintiff which was purposed to impugn his integrity, reliability, qualifications and general stock in his paralegal services.

203.    Defendant Whitlock and Brown's acts and omissions were pretextually in the furtherance of manufacturing reasons why they would not have to pay Plaintiff for his labor and services provided to each of them previously and why they would not be responsible for their own conduct.

204.    Defendant Whitlock and Brown, intentionally and without justification, induced Plaintiff to terminate his contractual and/or employment relationship with them by spreading false allegations about Plaintiff's involvement in the Minifield Case such as -- Plaintiff was allegedly committing unauthorized practice of law.

205.    More specifically, Attorney Defendants caused their own clients to (i) breach their fiduciary obligation inherent by inducing Plaintiff to demand payment from the administrators instead of from those who directly and proximately benefited from Plaintiff's litigation support and paralegal services provided to them including Whitlock, Brown, Deleonardis, Consumer Law, PLLC and The Brown Firm, PLLC.

206. Defendants used improper means and methods in carrying out their intentional interference, including violation of Defendants' covenant of good faith and fair dealing owed to Plaintiff and also by inducing and/or aiding and abetting each other to violate their fiduciary duty to Plaintiff in protecting Plaintiff from being abused and not paid for the litigation support which was provided in good faith to the Attorney

34

Defendants. But for this intentional and fraudulent inducement by Attorney Defendant, Plaintiff would have been paid for his labor and litigation support provided on the Jones Case and Minifield Case.

207. As a result of Defendants intentional and tortious interference, Plaintiff has suffered and continues to suffer damages in the form of lost income and profits and other damages which would not have incurred but for the tortious conduct of Defendants, together with punitive damages, in a sum to be established at trial.

**THIRTEENTH CLAIM FOR RELIEF**
**"Defamation"**
*(Against Brown and Whitlock)*

208. All allegations set forth above not inconsistent with the remaining allegations of this Thirteenth Claim for Relief are hereby realleged and incorporated herein by reference as if fully set forth herein.

209. Defendants have defamed Plainitff by contacting Plaintiff's friends, colleges and peers and telling them that Plaintiff's litigation support and paralegal services caused the Minifield Case and/or Complaint to be dismissed and that it was Plaintiff's fault the posture of the case deviated away from the normal course of litigation which was not truth and false.

210. Defendants' false and defamatory statements were published to third parties, with fault and without privilege, and such statements have damaged Plaintiff's reputation by lowering it in the estimation of third parties and deterring third party law firms and attorneys from associating or dealing with him.

211. As a result of Defendants' defamatory statements, Plaintiff has suffered and continues to suffer damages in the form of lost income and profits and other damages that it

would not have incurred but for the wrongful conduct of Defendants, in a sum to be established at trial.

## FOURTEENTH CLAIM FOR RELIEF
### "Civil Conspiracy"
*(Against Deleonardis, Brown, Whitlock)*

212.    All allegations set forth above not inconsistent with the remaining allegations of this Fourteenth Claim for Relief are hereby realleged and incorporated herein by reference as if fully set forth herein.

213.    Defendants intentional tortious interference in Plaintiff's business expectancy and billing and the other misconduct described above and throughout were the natural and probable consequences of a conspiracy between Defendants Brown, Whitlock, Deleonardis and others who carried this out for the purpose of injuring Plaintiff by causing him to be shed in bad light and demonized, and not paid for his labor and hard work provided to Attorney Defendants in good-faith.

214.    This conspiracy encompassed the combining of Defendants to do an unlawful act to the detriment of Plaintiff, or to do a lawful act in an unlawful manner to the detriment of Plaintiff, which conduct caused the Plaintiff to suffer special damage.

215.    As a result of Defendants' conspiracy to injure Plaintiff, Plaintiff suffered special and considerable damages, including lost income and profits and other damages, which would not have been incurred by Plaintiff but for the conspiracy between Judkins, Brown, Whitlock, Deleonardis, Consumer Law and Brown Firm together with punitive damages, in a sum to be established at trial.

## FIFTEENTH CLAIM FOR RELIEF
*Preliminary and Permanent Injunctive Relief*
(Against All Defendant)

216.    All allegations set forth above not inconsistent with the remaining allegations of this Fifteenth Claim for Relief are hereby realleged and incorporated herein by reference as if fully set forth herein.

217.    By reason of the foregoing, Plaintiff has sustained and will sustain significant injury and competitive disadvantage for which he has no adequate remedy at law and which would result in irreparable harm to the Plaintiff were Defendants not enjoined, preliminarily and permanently.

218.    As a result of the foregoing, Plaintiff is entitled to an order and judgment, preliminarily and permanently, prohibiting Defendants from converting, concealing and/or hiding financial instruments and assets from Plaintiff, and/or otherwise, including  without limitation  requiring  Defendants to "immediately" demonstrate why R.Jones and B.Jones should not be removed as Administrators of the Estate of Wayne A. Jones for good cause; and demonstrate why Defendants Deleonardis, Brown, Whitlock, Consumer Law, PLLC and The Brown Firm, PLLC, jointly and/or severely, should not be directed to place Three-Hundred Fifty Thousand ($350,000.00) Dollars  in trust and/or escrow with this Court; and/or demonstrate why the co-administrators in the Jones Case should not be required by this Court to certify they are bonded for a minimum of Two-Hundred Thousand ($200,000.00) Dollars to cover the previous costs of litigation and in the furtherance thereof.

## SIXTEENTH CLAIM FOR RELIEF
### *Negligence*
(Against Christopher E. Brown)

219.    All allegations set forth above not inconsistent with the remaining allegations of this Fifteenth Claim for Relief are hereby realleged and incorporated herein by reference as if fully set forth herein.

220.    Attorney Brown has a special and professional obligation to protect the Estate of Wayne A. Jones from unduly risk of financial loss.

221.    Attorney Brown has a special and professional obligation to protect the venders and contractors who provided litigation support services to the Estate of Wayne A. Jones and knowingly had not received payment for services provided.

222.    After the Rule 68 – Offer of Judgement was made to the Estate of Wayne A. Jones, Attorney Brown had a special and professional obligation to determine whether R.Jones and B.Jones were competent to make a legal decision on whether they should and/or could reject a One-Million ($1,000,000.00) Dollar offer to settle all claims relating to the death of their brother (i.e., Wayne A. Jones).

223.    Attorney Brown breached his special and professional obligation when he directed Plaintiff to try to explain the legalities of excepting and/or rejecting the Rule 68 – Officer of Judgment to R.Jones and/or B.Jones as a prerequisite for Plaintiff to obtain payment.

224.    Attorney Brown breached his professional obligation when he failed to explain and discuss the likely pitfalls of qualified immunity to his client and the likelihood of dismissal with prejudice based thereon.

225.    On September 7, 2018, the Honorable Judge Gina M. Groh dismissed the Jones

38

Case for the third time with prejudice --- and the first time based on qualified immunity grounds.

226.    Plaintiff is a third-party beneficiary to the Rule 68 – Offer of Judgment previously and unreasonably rejected by the Co-Administrators.

227.    Attorney Brown also breached his special and professional obligation by not challenging the Co-Administrators competence; by not ensuring the Co-Administrators possessed adequate surety and/or were bonded to administer the Estate of Wayne A. Jones to the extent it could adequately pay for the costs and services procured in the course of litigation.

228.    Attorney Brown also breached his special and professional obligation to protect the Estate and the third-party vendors by failing to institute administrator removal proceedings after he was forwarded emails from the Administrators that stated they "rejected" the One-Million ($1,000,000.00) Dollar offer because they did not feel it was enough to get the "cops" fired and put in jail. (paraphrased)

229.    Alternatively, but for Attorney Brown's breach of his special and professional obligations to Plaintiff and the Estate, a judgment offer would have been available to pay the costs of litigation but as it stands the case is dismissed with prejudice for the third time and will most likely not be remanded a third time.

230.    Hence, Attorney Brown's willful, wanton and reckless conduct, and/or negligent conduct proximately caused Plaintiff's injuries describe herein and throughout the complaint.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays the Court for an order and judgment:

1.    Judgment in the amount of $350,000.00 actual damages, jointly and severely, against all defendants;

2.      Judgment in the amount of $350,000.00 punitive damages, jointly and severely, against all defendants;

3.      Preliminarily and permanently, enjoin Defendants from rejecting reasonable offers of settlement in the Jones Case;

4.      Preliminarily and permanently whether the co-administrators Robert L. Jones and Bruce A. Jones possess the required competence to administer the Estate of Wayne A. Jones for the purposes of litigation;

5.      Alternatively, Order Robert L. Jones and Bruce A. Jones to certify and demonstrate the necessary surety bond to protect all vendors for their services and invoices and all litigation costs to be determined by the Court.

6.      Preliminarily and permanently, enjoin Deleonardis, Brown and Whitlock from making malicious, false and erroneous statements in public that Plaintiff is signing and filing legal pleadings on behalf of clients in the Jones Case and Minifield Case and representing any clients.

7.      Plaintiffs attorneys' fees and costs of this action;

8.      That all issues of act in this matter be determined by a jury; and

9.      For such other and further relief as the Court deems just and proper.


By: _____
Richard R. Cadmus Jr.
2010 W. Oxford Street
Philadelphia, PA 19121
Tele: (540)395-3539
Email: randcadmus@yahoo.com
*Pro Se Plaintiff*